THE STATE EX REL. SEATON *v.* HOLMES, JUDGE.

[Cite as *State ex rel. Seaton v. Holmes,*
100 Ohio St.3d 265, 2003-Ohio-5897.]

(No. 2003–0841—Submitted September 16, 2003—Decided November 19, 2003.)

**Per Curiam.**

{¶ 1} In 1998, relator, Rachelle R. Seaton, and Aaron L. Courtright were married in Ohio. Their minor child, Ryan, was born in Ohio on September 12, 1999. During an April 10, 2002 divorce proceeding before respondent, Ross County Common Pleas Court Judge Nicholas H. Holmes Jr., Rachelle and Aaron specified that they were going to immediately, but separately, relocate to Missouri. On April 16, 2002, Rachelle, Aaron, and Ryan moved to Missouri. In Missouri, Rachelle and Ryan lived separately from Aaron.

{¶ 2} On May 15, 2002, Judge Holmes issued Rachelle and Aaron a divorce decree that incorporated a shared parenting plan and awarded primary custody of Ryan to Rachelle. The decree did not specify that Ohio would have continuing jurisdiction. It authorized both parents' relocation to Missouri and refers to the parents' intention to compute child support based on their income in that state. On August 19, 2002, Rachelle registered the Ohio divorce decree in Missouri.

{¶ 3} On September 27, 2002, when Aaron, Rachelle, and Ryan were living in Missouri, Aaron filed in respondent's court a motion for contempt and termination of shared parenting. In response, Rachelle filed a motion asking the Ohio court to dismiss Aaron's action, claiming that the court lacked jurisdiction. Aaron moved back to Ohio on November 3, 2002.

{¶ 4} On November 20, 2002, Judge Holmes denied Rachelle's motion to dismiss. Judge Holmes concluded that the Ohio court had continuing jurisdiction under Civ.R. 75(J) and R.C. 3109.22(A)(1) and (2). On January 13, 2003, Judge Holmes denied Rachelle's motion for an evidentiary hearing concerning her jurisdictional claim.

{¶ 5} Rachelle appealed, and the Court of Appeals for Ross County dismissed the appeal for lack of a final appealable order.

{¶ 6} In February 2003, Rachelle filed a motion pertaining to custody in a Missouri court. Proceedings on that motion are continuing, and, in that case, Aaron and Rachelle have been scheduled to begin mediation. Judge Holmes ordered Rachelle to deliver Ryan to the Ohio court on May 21 and July 24 for hearings on Aaron's motions.

{¶ 7} On May 9, 2003, Rachelle filed this action for a writ of prohibition to prevent Judge Holmes from proceeding on Aaron's postdivorce motions. Rachelle also moved for an alternative writ to prevent Judge Holmes from conducting the May 21 and July 24 hearings. On May 16, 2003, Judge Holmes stayed the underlying proceedings during the pendency of this prohibition case. We granted an alternative writ sua sponte. *State ex rel. Seaton v. Holmes*, 99 Ohio St.3d 1457, 2003-Ohio-3514, 790 N.E.2d 1220.

{¶ 8} For the following reasons, Rachelle is entitled to the requested writ of prohibition.

{¶ 9} "Under the Uniform Child Custody Jurisdiction Act ["UCCJA"], R.C. 3109.21 *et seq.,* and the Parental Kidnapping Prevention Act ["PKPA"], Section 1738A, Title 28, U.S.Code, a state court that has rendered an initial custody decree has exclusive jurisdiction over the ongoing custody dispute *if that state has continuing jurisdiction.*" (Emphasis added.) *Justis v. Justis* (1998), 81 Ohio St.3d 312, 691 N.E.2d 264, syllabus.

{¶ 10} Section 1738A(d) of the PKPA provides that the state court that has made the initial child custody determination retains jurisdiction only if that state remains the residence of the child or any contestant:

{¶ 11} "The jurisdiction of a court of a State which has made a child custody or visitation determination consistently with the provisions of this section continues as long as [that court had jurisdiction under its state's laws] and *such State remains the residence of the child or of any contestant.*" (Emphasis added.)

{¶ 12} Judge Holmes lacks jurisdiction over Aaron's postdivorce motions because Aaron, Rachelle, and Ryan had all moved to Missouri by the time the original divorce decree was entered. Both parents and the child were living in Missouri when Aaron filed his first postdecree motions in September 2002.

{¶ 13} The word "remains" in Section 1738A(d) of the PKPA "is defined by the dictionary." See, e.g., *In re Marriage of Pedowitz* (1986), 179 Cal.App.3d 992, 1001, 225 Cal.Rptr. 186. See, also, *Maxie v. Fernandez* (E.D.Va.1986), 649 F.Supp. 627, 631; cf. *Campus Bus Serv. v. Zaino*, 98 Ohio St.3d 463, 2003-Ohio-1915, 786 N.E.2d 889, ¶ 21 (court construes undefined statutory language according to rules of grammar and common usage by consistently using dictionary definitions). After applying the applicable rules of construction, we determine that the word "remain" means "to stay in the same place" and "to continue unchanged in form, condition, status, or quantity." Webster's Third New International Dictionary (1971) 1919.

{¶ 14} Ohio was the residence of both parents and the child when they agreed to terms that were subsequently incorporated into the original divorce decree. But all of them moved to Missouri. Although Aaron later moved back to Ohio, he did not thereby confer continuing jurisdiction on the Ohio court. His status as an Ohio resident did not "continue unchanged" from the issuance of the divorce decree until the present. In fact, according to Rachelle's uncontroverted affidavit, Aaron has expressed his intent to continue residence in Missouri and doubts the likelihood of further proceedings in Ohio.

{¶ 15} Therefore, under the PKPA, Ohio lacks jurisdiction over Aaron's postdecree motions. In other words, "[i]f the party attempting to 'continue' jurisdiction in the original court leaves that jurisdiction, establishes residence elsewhere, and subsequently attempts to reestablish residence in the original court, then that party does not satisfy the requirement of subsection (d) that the state or district 'remains the residence' of that party." *Maxie*, 649 F.Supp. at 631; see, also, *In re Marriage of Pedowitz*, 179 Cal.App.3d at 1001, 225 Cal.Rptr. 186 ("whether [father] remained or continued as a resident of California until he filed his petition to modify depends upon whether he was temporarily absent with the intention of returning to California, his home, or if he moved from California and stayed in Florida during the 11 months with the intention of making Florida his residence and his home"); *Shook v. Shook* (Ala.Civ.App.1994), 651 So.2d 6, 8 ("under the PKPA, one of the contestants must remain a resident of the state that issued the original custody determination for that state to retain continuing jurisdiction over the dispute"); see, generally, Annotation, Child Custody: When Does State that Issued Previous Custody Determination Have Continuing Jurisdiction Under Uniform Child Custody Jurisdiction Act (UCCJA) or Parental Kidnapping Prevention Act (PKPA), 28 USCS § 1738A (1991), 83 A.L.R.4th 742, 752, Section 2[b].

{¶ 16} Judge Holmes's citation of the UCCJA and Civ.R. 75(J) in support of his exercise of continuing jurisdiction in the underlying case does not warrant a contrary conclusion. Insofar as the Ohio version of the UCCJA conflicts with the

PKPA, the PKPA prevails. *Justis*, 81 Ohio St.3d at 317, 691 N.E.2d 264; see, also, *Barclay v. Eckert*, 2000 ME 10, 743 A.2d 1259, ¶ 8 ("In the event of a conflict, the PKPA preempts the UCCJA"); *Fuerstenberg v. Fuerstenberg* (S.D. 1999), 591 N.W.2d 798, 805 ("the PKPA preempts conflicting state law"); *Nadeau v. Nadeau* (R.I.1998), 716 A.2d 717, 721; *Moore v. Richardson* (1998), 332 Ark. 255, 263, 964 S.W.2d 377; *Michalik v. Michalik* (1993), 172 Wis.2d 640, 649, 494 N.W.2d 391. In fact, R.C. 3109.22(A)(1) requires, comparably to the PKPA, that "a parent or person acting as parent *continues* to live in this state" before an Ohio court can exercise jurisdiction. (Emphasis added.) And the provisions of Civ.R. 75 pertaining to continuing jurisdiction do not confer jurisdiction in Ohio over postdecree matters when jurisdiction is otherwise lacking under the PKPA or the UCCJA. See *Mayor v. Mayor* (1991), 71 Ohio App.3d 789, 792, 595 N.E.2d 436.

{¶ 17} Moreover, this result is consistent with the preeminent purposes of the UCCJA, which are "avoiding 'jurisdictional competition and conflict with the courts of other states and assur[ing] that the state with the optimum access to the relevant facts makes the custody determination, thus protecting the best interests of the child.'" *Justis*, 81 Ohio St.3d at 318, 691 N.E.2d 264, quoting *In re Guardianship of Wonderly* (1981), 67 Ohio St.2d 178, 180, 21 O.O.3d 111, 423 N.E.2d 420. Missouri is the state with the optimum access to the pertinent facts here.

{¶ 18} Based on the foregoing, Judge Holmes and the Ohio common pleas court patently and unambiguously lack jurisdiction over Aaron's postdecree motions. Therefore, we grant Rachelle Seaton a writ of prohibition preventing Judge Holmes from exercising further jurisdiction in the underlying case.

Writ granted.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

---

Katherine Hine, for relator.

Scott W. Nusbaum, Ross County Prosecuting Attorney, and Matthew S. Schmidt, Assistant Prosecuting Attorney, for respondent.