{¶ 31} Unquestionably, "[t]he parties have succeeded in muddying the jurisdictional waters and in creating the very situation that the Uniform Child Custody Jurisdiction Act ("UCCJA") seeks to avoid." Elijah C.R. v. Stephanie A.R. (May 3, 1999), Del. Fam. Ct. No. CN97-11383. As a result, this Court has been placed in the position of repeatedly attempting to determine the proper state to determine custody of the parties' children and in so doing has left the status of these children in limbo for more than three years. As I believe that the majority's interpretation of the PKPA is in contravention of its stated purposes, I respectfully dissent.
 {¶ 32} When it enacted the PKPA, Congress included in its purpose the following:
"(1) promote cooperation between State courts to the end that a determination of custody and visitation is rendered in the State which can best decide the case in the interest of the child;
"(2) promote and expand the exchange of information and other forms of mutual assistance between States which are concerned with the same child;
"(3) facilitate the enforcement of custody and visitation decrees of sister States;
"(4) discourage continuing interstate controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;
"(5) avoid jurisdictional competition and conflict between State courts in matters of child custody and visitation which have in the past resulted in the shifting of children from State to State with harmful effects on their well-being[.]" P.L.96-611, 94 Stat. 3566, at Section 7(c).
The majority's result, however, is inconsistent with the purpose of both the UCCJA and the PKPA: "to assure that the state with the optimum access to the relevant facts makes a custody determination that protects the child's best interests." Stateex rel. Morenz v. Kerr, 104 Ohio St.3d 148, 2004-Ohio-6208, at ¶30.
 {¶ 33} I agree with the majority that our decision is guided by 28 U.S.C. 1738A. Three important provisions in 28 U.S.C. 1738A
must be scrutinized. In its view, the majority finds that28 U.S.C. 1738A(g) is dispositive:
"A court of a State shall not exercise jurisdiction in any proceeding for a custody or visitation determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make acustody or visitation determination." (Emphasis added.)
I further agree with the majority that by its plain language,28 U.S.C. 1738A(g) only prohibits State A from exercising jurisdiction during the pendency of a proceeding in State B, if State B is exercising its jurisdiction to make a custody determination. I, however, cannot agree with the majority's conclusion that Ohio's trial court herein made a custody determination.
 {¶ 34} "`[C]ustody determination' means a judgment, decree, or other order of a court providing for the custody of a child, and includes permanent and temporary orders, and initial orders and modifications[.]" 28 U.S.C. 1738A(b)(3). The Ohio Supreme Court has found that not every action involving a child invokes this definition. See Kerr, supra, at ¶ 22 (finding that a child support order does not fall within the definition of a "custody determination" under the PKPA). Here, the majority's result directly contradicts both the plain language of the PKPA and greatly expands Congress' chosen definition of for "custody determination."
 {¶ 35} In the instant matter, the trial court expressly declined to exercise its jurisdiction under the PKPA. The majority finds that such an act invokes subsection (g), which requires the trial court to be "exercising jurisdiction." Succinctly stated, the majority finds that a refusal to exercise jurisdiction is itself the exercise of jurisdiction. I cannot agree with such an interpretation.
 {¶ 36} Absent the provisions surrounding subsection (g), I agree that such a result could be reached. However, both the section immediately preceding and the section immediately following subsection (g), expressly address the consequences of a trial court declining to exercise its jurisdiction.
"(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if —
"* * *
"(2) the court of the other State * * * has declined to exercise such jurisdiction to modify such determination.
"* * *
"(h) A court of a State may not modify a visitation determination made by a court of another State unless the court of the other State no longer has jurisdiction to modify such determination or has declined to exercise jurisdiction to modify such determination." (Emphasis added.) 28 U.S.C. 1738A(f) (h).
As these provisions both expressly permit the Maryland court to exercise jurisdiction once Ohio has declined to exercise jurisdiction, I would find subsection (g) inapplicable to the facts at hand.
 {¶ 37} Tragically, these children have been tossed and thrown between parents for more than three years because two states have been unable to properly determine their parents' custody rights. Now, once both Ohio and Maryland have fully complied with the PKPA, the children are subject to being relocated once again and will inevitably endure further custody disputes. Such a result contravenes both the plain language of the PKPA and its stated purpose. Accordingly, I respectfully dissent.